IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

BRANDON MOB INVESTORS, LLC                                    PLAINTIFF

vs.                                    Civil Action No. 3:13CV322DPJ-FKB

ERDMAN COMPANY (F/K/A MARSHALL                               DEFENDANTS
ERDMAN & ASSOCIATES, INC.);
E. CORNELL MALONE CORPORATION;
FIRESTONE BUILDING PRODUCTS
COMPANY, LLC

## COMPLAINT

COMES NOW Plaintiff Brandon MOB Investors, LLC ("Brandon MOB") and for its

Complaint against Defendants Erdman Company f/k/a Marshall Erdman & Associates, Inc.

("Erdman"), E. Cornell Malone Corporation ("Malone Roofing") and Firestone Building

Products Company, LLC ("Firestone"), states as follows:

### INTRODUCTION

1.      Brandon MOB is the owner/developer of a medical care facility that has

experienced numerous and significant water leaks through the roofing system of the building that

was constructed less than three years ago.  In order to remedy these water leaks and the

associated damage, Brandon MOB brings the present action against the design-builder of the

facility, Erdman, the roofing subcontractor for the facility, Malone Roofing, and the roofing

system manufacturer, supplier and warranty provider, Firestone.

<u>**JURISDICTION AND VENUE**</u>

2.     This Court has jurisdiction over this action and over these parties pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the matter in controversy exceeds $75,000, exclusive of interest and costs.

3.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

<u>**PARTIES**</u>

4.     Brandon MOB is a limited liability company and is a citizen, for purposes of diversity jurisdiction, of Delaware and Illinois. Brandon MOB's sole members are Cogdell Spencer, LP, a Delaware limited partnership and Cogdell Spencer Advisors Management, LLC, a Delaware limited liability company. The sole member of Cogdell Spencer Advisors Management, LLC is Cogdell Spencer, LP, a Delaware limited partnership. The sole members of Cogdell Spencer, LP are CS Business Trust I, a Maryland Trust and CS Business Trust II, a Maryland Trust. The sole member of CS Business Trust I and CS Business Trust II is Ventas CS, LLC, a Delaware limited liability company. The sole member of Ventas CS, LLC is Ventas Realty, LP, a Delaware limited partnership. The sole members of Ventas Realty, LP are Ventas LP Realty, LLC, a Delaware limited liability company and Ventas, Inc. a Delaware corporation. The sole member of Ventas LP Realty, LLC is Ventas, Inc., a Delaware corporation. None of the members of Brandon MOB are citizens of the same state as Erdman, Malone Roofing, or Firestone. During the time period involved in the subject matter of this lawsuit, Brandon MOB was involved in the development and construction of the Project.

2

5.      Upon information and belief, Erdman is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business at 1 Erdman Place, Madison, Wisconsin 53717.  Erdman may be served with process by service upon National Registered Agents, Inc., 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232. During the time period involved in the subject matter of this lawsuit, Erdman was involved in the business of providing design-build services.  Erdman was and is registered to conduct business and maintains a lawfully registered agent in the State of Mississippi.

6.      Upon information and belief, Malone Roofing is a corporation organized and existing under the laws of the State of Mississippi, with its principal place of business located at 439 Dory Street, Jackson, Mississippi 39201.  Malone Roofing may be served with process by service upon E. Cornell Malone, 439 Dory Street, Jackson, Mississippi 39201.  During the time period involved in the subject matter of this lawsuit, Malone Roofing was involved in the business of providing roofing services as a subcontractor.  Malone Roofing was and is registered to conduct business in the State of Mississippi, maintains offices in the State of Mississippi and maintains a lawfully registered agent in the State of Mississippi.

7.      Upon information and belief, Firestone is a limited liability company organized and existing under the laws of the State of Indiana, with its principal place of business located at 250 West 96th Street, Indianapolis, IN 46260.  Firestone may be served with process by service upon National Registered Agents, Inc., 840 Trustmark Building, 248 E. Capitol Street, Jackson, Mississippi 39201.  Firestone is a wholly-owned subsidiary of Bridgestone Americas, Inc., a corporation organized and existing under the laws of the State of Nevada, with its principal place of business in the State of Tennessee.  During the time period involved in the subject matter of this lawsuit, Firestone was involved in the business of, *inter alia*, manufacturing, supplying and

3

providing warranties for roofing systems.  Firestone was and is registered to conduct business in

the State of Mississippi and maintains a lawfully registered agent in the State of Mississippi.

**FACTUAL BACKGROUND**

**THE PROJECT**

8.      The project at issue in this lawsuit is known as the University Physicians Grants

Ferry Building, which is a medical care facility located in Flowood, Mississippi (the "Project").

9.      The Project is a low-rise building, rectangular in shape and contains two large,

flat roofing surfaces covered by a rubber roofing system. Specifically the roofing system consists

of a 45 millimeter thick, mechanically fastened, reinforced thermoplastic polyolefin ("TPO")

roofing membrane installed on top of mechanically fastened insulation secured to the metal roof

deck.

**THE AGREEMENT BETWEEN BRANDON MOB AND ERDMAN**

10.     Brandon MOB is the owner/developer of the Project.   On or about February 9,

2009, Brandon MOB and Erdman entered into a Design-Build Contract (the "Contract").  A true

and accurate copy of the Contract is attached hereto and incorporated herein by reference as

Exhibit 1.

11.     Brandon MOB and Erdman agreed to "cooperate fully with each other, and

proceed on the basis of trust and good faith to permit each party to realize the benefits afforded

under" the Contract.  Exhibit 1, Article 1.1.

12.     Erdman's work included the "design, construction and other services required by

the [Contract] Documents, including furnishing labor, materials, equipment and services

reasonably inferable from the [Contract] Documents."  Exhibit 1, Article 1.12.

13.     Erdman expressly agreed to indemnify Brandon MOB:

4

> To the fullest extent permitted by law, [Erdman] shall defend, indemnify and hold harmless [Brandon MOB], its agents and employees from and against claims, damages, losses, and expenses including but not limited to reasonable attorneys' fees, arising out of or resulting from performance of Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself and other property required to be insured under Article 8) but only to the extent caused by negligent acts or omissions of [Erdman], a Subcontractor, a material supplier, anyone directly or indirectly employed by them, or anyone for whose acts they may be liable.

Exhibit 1, Article 8.11.

14.     Erdman warranted to Brandon MOB that its "construction work [would] be free from defects not inherent in the quality required or permitted by law or otherwise, and that the construction work [would] conform to the requirements of the [Contract] Documents."  Exhibit 1, Article 9.1.

15.     Pursuant to the Contract, Erdman was required to assign to Brandon MOB "all warranties and guarantees obtained from all vendors and suppliers and render reasonable assistance to [Brandon MOB] when requested to enforce such warranties and guarantees." Exhibit 1, Article 9.3.

16.     In performing design services on the Project, Erdman was required to perform such services "with the skill and care ordinarily used by members of the design profession practicing under similar conditions at the same time and locality of the Project."  Exhibit 1, Article 11.1.3.

17.     In performing its construction services, Erdman was required to "through itself or Subcontractors, provide and furnish all necessary management, labor, materials, supplies, tools and equipment for the construction of the Project."  Exhibit 1, Article 11.4.1.  Erdman was also required to perform its construction services in a "workmanlike manner."  *Id.*

5

18.     Under the Contract, Erdman was "solely responsible for and [had] control over all construction means, methods, techniques, sequences and procedures and for coordinating all portions of the work under the [Contract] Documents."  Exhibit 1, Article 11.4.2.  Brandon MOB expressly agreed "that the direction and supervision of the working forces, including Subcontractors, rest[ed] exclusively with [Erdman]."  *Id.*

19.     Under the Contract, Brandon MOB is entitled to recover from Erdman its "reasonable attorneys' fees, expert witness fees, costs and expenses incurred" in connection with the litigation.  Exhibit 1, Article 12.6.

**THE SUBCONTRACT BETWEEN ERDMAN AND MALONE ROOFING**

20.     On or about July 22, 2009, Erdman and Malone Roofing entered into a subcontract for Malone Roofing to serve as Erdman's roofing and flashing subcontractor for the Project (the "Subcontract").  A true and accurate copy of the Subcontract is attached hereto and incorporated herein by reference as Exhibit 2.

21.     Malone Roofing agreed to "furnish and provide . . . all work, labor, materials, equipment, services, [and] supervision [to] perform and complete [its scope] in a neat, first-class, good and workmanlike manner and in accordance with and reasonably inferable from that which is indicated in the Subcontract Documents."  Exhibit 2, Article 1.

22.     The Subcontract incorporated by reference the Brandon MOB/Erdman Contract and expressly provided that "[i]n the event of any conflict between this Subcontract and the other Subcontract Documents, the provisions of the [Brandon MOB/Erdman Contract] shall take precedence."  Exhibit 2, Articles 1.1 and 1.2.

23.     The Subcontract expressly provided that Malone Roofing was to be paid by Erdman only if Malone Roofing fulfilled the Subcontract "to the satisfaction of [Erdman] and [Brandon MOB]." Exhibit 2, Article 2.1. (emphasis added).

24.     Pursuant to the Subcontract, Malone Roofing warranted "that all materials and equipment furnished under [the] Subcontract shall be new and of the best quality of their respective kinds . . . and that the Work will be performed strictly in accordance with the Subcontract Documents and shall be free from defective workmanship and materials and be satisfactory to [Erdman] and [Brandon MOB]." Exhibit 2, Article 5.1. (emphasis added).

25.     Malone Roofing also agreed that "[s]hould any Work performed or materials furnished by [Malone Roofing] . . . not meet the requirements of the Subcontract Documents, [Malone Roofing] would promptly . . . correct or remove such non-conforming work or materials . . . and pay the entire cost . . . for the required corrections and removals . . . [or] for any other damage caused by such removal and/or correction." Exhibit 2, Article 5.2

26.     Under the Subcontract, Malone Roofing was also required to indemnify both Erdman and Brandon MOB:

> To the fullest extent permitted by law, [Malone Roofing] shall defend, indemnify and hold harmless [Erdman], [Brandon MOB] and their agents, consultants, and employees from and against all claims, including claims for which [Erdman] or [Brandon MOB] may be claimed to be in part liable, for damages, losses and expenses, including, but not limited to, attorneys' fees, including legal fees and disbursements paid or incurred to enforce the provisions of this paragraph, arising out of or resulting from the performance of the Work provided for in this Subcontract, the selection of means and methods for performing the Work, or occurring or resulting from the use by [Malone Roofing], its agents or employees of materials, equipment, or other property, whether the same be owned by [Erdman], [Brandon MOB], [Malone Roofing], or third parties, but only to the extent that any such claim, damage, loss or expense (1) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property including the loss of use therefrom, and (2) is caused in whole or in part by any negligent act or omission of [Malone Roofing], their sub-subcontractors,

7

anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable.

Exhibit 2, Article 13.1.

ROOFING SYSTEM AND WARRANTY

27.     Firestone manufactured and supplied the TPO rubber roofing system utilized on the Project.

28.     On or about June 4, 2010, Firestone issued a Red Shield Roofing System Limited Warranty (the "Roofing Warranty") to Brandon MOB.  A true and accurate copy of the Roofing Warranty is attached hereto and incorporated herein by reference as Exhibit 3.  The Roofing Warranty was issued for a period of twenty (20) years.

29.     The Roofing Warranty provided that during the twenty (20) year warranty period, Firestone warranted to Brandon MOB that Firestone would repair any leak in the roofing system on the Project.  The Roofing Warranty expressly covered the "Firestone brand roofing membranes, Firestone brand roofing insulations, Firestone brand roofing metal and other Firestone brand roofing accessories."  Exhibit 3, Article 1.

30.     The Roofing Warranty provided a procedure whereby Brandon MOB would provide notice of leaks in the roofing system and Firestone would conduct an investigation as to the cause of the leaks and potential remedies for the leaks.  Exhibit 3, Articles 2-3.

DEFICIENCIES IN ROOFING SYSTEM

31.     Malone Roofing installed the roofing system and flashing components for the Project.  The Project reached final completion in or around July 2010.

32.     On or around August 13, 2010, following a substantial rain event, Brandon MOB noticed water intrusion and water damage in several areas inside the facility.  Brandon MOB reported these issues to the design-builder, Erdman, the roofing subcontractor, Malone Roofing,

and to the roofing manufacturer, supplier and issuer of the Roofing Warranty, Firestone (collectively, the "Defendants").

33.     The Defendants responded to these issues and returned to the Project site on or around August 17, 2010 to investigate.  Upon information and belief, the Defendants apparently concluded that the water intrusion was the result of leaks in the roofing system on the Project. The Defendants began work to attempt to remedy the deficiencies, primarily through the installation of patches.

34.     Despite these remedial efforts, the roofing system continued to leak in other locations within a day of the first repair.  The Defendants returned to the Project site again on August 18 and 19, 2010 to attempt additional repairs for newly discovered leaks.

35.     Even after these attempted repairs, the roofing system on the Project continued to leak and cause water penetration into the facility following any substantial rain event.  Brandon MOB continued to report these issues to the Defendants.

36.     Between September 2010 and April 2013, the Defendants returned to the Project site more than thirty (30) additional times to investigate reported leaks and, in many cases, to perform remedial work, primarily the installation of patches and repairing open lap seams in the rubber roofing system.

37.     Despite these extensive remedial efforts by the Defendants, the roofing system on the Project continued to leak following any substantial rain event.

ASSESSMENT OF ROOFING SYSTEM

38.     In or around December 2012, Brandon MOB retained an independent consultant to perform an assessment of the existing conditions of the roofing system on the Project and investigate four known leaks in the roofing system (the "Assessment").

9

39.     The Assessment indicated that in the almost three years since completion of the Project, there were at least 265 patches installed on the roofing system and at least 59 open lap seams repaired.

40.     Despite evidence of these extensive remedial efforts, the Assessment also revealed widespread deficiencies in the Firestone roofing system materials as well as the installation and repairs of the roofing system and flashing components.  Specifically, the Assessment revealed numerous holes, gaps and punctures in the roofing system, improperly welded and/or repaired lap seams, improperly applied and/or repaired sealant, improperly installed and/or repaired patches and improperly installed and/or repaired flashing components for the roofing system.

41.     Given the substantial leaks in the roofing system and the associated water and moisture penetration into the medical care facility structure, the Assessment noted the likelihood of extensive damage to the underlying roofing and building components and the potential for mold growth.

CURRENT STATUS OF ROOFING SYSTEM

42.     The leaks in the roofing system continue almost three years following completion of the Project.  The Defendants have been unable and/or unwilling to properly repair the roofing system and stop the leaks into the facility.

43.     The leaks in the roofing system and the associated water penetration have caused Brandon MOB to expend substantial monies to remediate.  These leaks and water penetration have also caused extensive damage to the building structure as well as items within the facility and other financial impacts which have yet to be determined.

10

44.     By letter of May 10, 2013, Brandon MOB requested that Erdman, Malone Roofing and Firestone commit to repairing and/or replacing the roofing system on the Project. The Defendants declined this request.  The present suit has followed.

45.     All conditions precedent to bringing this Complaint, if any, have been satisfied and/or waived or been made impossible by the actions and/or omissions of Erdman, Malone Roofing and/or Firestone.

### COUNT I
### ERDMAN
### (BREACH OF CONTRACT)

46.     Brandon MOB incorporates by reference Paragraphs 1 through 45 as if fully alleged herein.

47.     In accordance with the Contract, Erdman owed Brandon MOB a duty to properly perform its design and construction services on the Project and otherwise carry out its contractual obligations as described above.

48.     Erdman breached its obligations under the Contract by, *inter alia*:

   a)   Failing to perform its design and construction services in accordance with the Contract Documents;

   b)   Failing to provide construction work that was free from defects;

   c)   Failing to provide construction services in a workmanlike manner;

   d)   Failing to perform its construction services so as to ensure a properly installed and functioning roofing system for the Project;

   e)   Failing to properly perform its construction services, leading to a roofing system for the Project that suffers extensive leaks following substantial rain events;

   f)   Providing a roofing system for the Project that has required extensive remedial work;

11

g)    Failing to timely or properly remedy the extensive problems and leaks in the roofing system;

h)    Failing to provide Brandon MOB with the assistance it required to enforce the relevant roofing warranties of Malone Roofing and Firestone;

i)    Failing to provide proper and adequate management and supervision of its subcontractors, including Malone Roofing, to ensure a properly functioning roofing system for the Project; and

j)    Failing to fully cooperate with Brandon MOB and proceed on the basis of trust and good faith to permit Brandon MOB to realize the benefits afforded under the Contract.

49.    Erdman's failures to perform its design and construction services for the Project as set forth above constitute material breaches of the Contract.

50.    Erdman's breaches of its contractual obligations as set forth above have caused Brandon MOB to incur substantial damages.

51.    As a direct result of Erdman's material breaches of the Contract, Brandon MOB has suffered, and will continue to suffer, substantial harm and damages of at least $750,000, due to the need to repair and/or replace the roofing system, retain consultants to investigate the full extent of the damage to the roofing system and the underlying structure, repair damage to the underlying structure, repair and/or replace items in the facility damaged by the water penetration and other financial impacts which have yet to be determined.

## COUNT II
## ERDMAN
### (CONTRACTUAL INDEMNIFICATION)

52.    Brandon MOB incorporates by reference Paragraphs 1 through 51 as if fully alleged herein.

53.    Article 8.11 of the Contract between Brandon MOB and Erdman is a contractual indemnity provision.

12

54.     Pursuant to the terms of the contractual indemnity provision, Erdman is obligated to indemnify Brandon MOB for claims related to the performance of the work by Erdman, or its subcontractors that is attributable to "injury to or destruction of tangible property. . . to the extent caused by negligent acts or omissions of [Erdman, or its subcontractors] or anyone for whose acts they may be liable." Exhibit 1, Article 8.11.

55.     Erdman owed a duty to Brandon MOB to properly perform its design and construction services on the Project.

56.     Erdman breached its duty to Brandon MOB to properly perform its design and construction services on the Project.

57.     Erdman's breach of these duties to Brandon MOB caused Brandon MOB to incur substantial damages to tangible property.

58.     Among other things, Brandon MOB paid monies to repair and/or replace items in the facility damaged as a result of water leaking through the roofing system.

59.     Brandon MOB also paid monies to retain consultants to investigate the causes of the leaks in the roofing system.

60.     Pursuant to Article 8.11 of the Contract, Brandon MOB is entitled to be indemnified by Erdman for all injury to or destruction of tangible property that arose in connection with the negligence of Erdman and its subcontractors, including Malone Roofing, and any cost associated with investigating these issues.

61.     The exact amount of the monies for which Erdman owes an obligation of indemnification is at least $250,000, exclusive of interest and costs, and will be proven at trial.

## COUNT III
### ERDMAN
### (NEGLIGENCE)

62.     Brandon MOB incorporates by reference Paragraphs 1 through 61 as if fully alleged herein.

63.     Erdman had a duty to perform its design services on the Project with the requisite standard of care.

64.     Erdman also had a duty to perform its construction services on the Project in a workmanlike manner and with the requisite standard of care.

65.     Erdman breached these duties in performing its design and construction services on the Project by, *inter alia*, failing to provide design and construction services that complied with the applicable standard of care, negligently and improperly installing and repairing the roofing system on the Project, negligently managing and supervising its subcontractors, including Malone Roofing, and failing to provide a properly functioning roofing system for the Project and a building that was safe for use as a medical facility.

66.     Erdman's breaches of these duties as set forth above have caused Brandon MOB to incur substantial damages.

67.     As a direct and proximate cause of Erdman's breaches, Brandon MOB has suffered, and will continue to suffer, substantial harm and damages of at least $750,000, due to the need to repair and/or replace the roofing system, retain consultants to investigate the full extent of the damage to the roofing system and the underlying structure, repair damage to the underlying structure, repair and/or replace items in the facility damaged by the water penetration and other financial impacts which have yet to be determined.

14

## COUNT IV
## ERDMAN
### (BREACH OF EXPRESS WARRANTIES)

68.     Brandon MOB incorporates by reference Paragraphs 1 through 67 as if fully alleged herein.

69.     Under the Contract, Erdman expressly warranted that its work would be free of defects, would conform to the Contract Documents and that Erdman would promptly correct any defects in its work.

70.     Erdman breached these express warranties by:

      a)     Failing to provide construction services that were free of defects and that conformed to the Contract Documents;

      b)     Failing to promptly correct defects in the roofing system on the Project; and

      c)     Failing to perform its work under the Contract in a workmanlike manner so as to provide a roofing system that was complete and without leaks.

71.     Erdman's breaches of these express warranties as set forth above have caused Brandon MOB to incur substantial damages.

72.     As a direct and proximate cause of Erdman's breaches of these express warranties, Brandon MOB has suffered, and will continue to suffer, substantial harm and damages of at least $750,000, due to the need to repair and/or replace the roofing system, retain consultants to investigate the full extent of the damage to the roofing system and the underlying structure, repair damage to the underlying structure, repair and/or replace items in the facility damaged by the water penetration and other financial impacts which have yet to be determined.

**COUNT V**
**ERDMAN**
**(BREACH OF IMPLIED WARRANTIES)**

73.     Brandon MOB incorporates by reference Paragraphs 1 through 72 as if fully alleged herein.

74.     Under the Contract, there were also implied warranties, including an implied warranty to perform construction services in a skillful, careful, diligent and workmanlike manner, and a duty to provide a roofing system that was fit for its particular purpose.

75.     Erdman breached these implied warranties by failing to perform its work in a skillful, careful, diligent and workmanlike manner and failing to provide a properly functioning roofing system for the Project that was fit for its particular and intended purpose.

76.     Erdman's breaches of these implied warranties as set forth above have caused Brandon MOB to incur substantial damages.

77.     As a direct and proximate cause of Erdman's breaches of these implied warranties, Brandon MOB has suffered, and will continue to suffer, substantial harm and damages of at least $750,000, due to the need to repair and/or replace the roofing system, retain consultants to investigate the full extent of the damage to the roofing system and the underlying structure, repair damage to the underlying structure, repair and/or replace items in the facility damaged by the water penetration and other financial impacts which have yet to be determined.

**COUNT VI**
**ERDMAN**
**(BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)**

78.     Brandon MOB incorporates by reference Paragraphs 1 through 77 as if fully alleged herein.

79.     The Contract between Brandon MOB and Erdman contains an implied covenant of good faith and fair dealing between the parties.

80.     Erdman breached this implied covenant of good faith and fair dealing by willfully, knowingly and wrongfully failing to provide Brandon MOB with the benefits it was entitled to under the Contract, including a roofing system for the Project that functioned properly, was free from defects and without leaks.

81.     Erdman's breaches of the implied covenant of good faith and fair dealing have caused Brandon MOB to incur substantial damages.

82.     As a direct and proximate cause of Erdman's breaches of its implied covenant of good faith and fair dealing, Brandon MOB has suffered, and will continue to suffer, substantial harm and damages of at least $750,000, due to the need to repair and/or replace the roofing system, retain consultants to investigate the full extent of the damage to the roofing system and the underlying structure, repair damage to the underlying structure, repair and/or replace items in the facility damaged by the water penetration and other financial impacts which have yet to be determined.

**COUNT VII**
**MALONE ROOFING**
**(BREACH OF CONTRACT – THIRD PARTY BENEFICIARY)**

83.     Brandon MOB incorporates by reference Paragraphs 1 through 82 as if fully alleged herein.

84.     Brandon MOB was a third party beneficiary of the Subcontract.  The Brandon MOB/Erdman Contract was incorporated by reference into the Subcontract and the Brandon MOB/Erdman Contract terms take precedence over the Subcontract terms to the extent there is a conflict.  Exhibit 2, Articles 1.0 and 1.1.  Further, the Subcontract required Malone Roofing to

17

complete its work to the satisfaction of both Erdman and Brandon MOB.  Exhibit 2, Articles 2.1 and 5.1.

85.     In accordance with the Subcontract and the Contract, Malone Roofing owed Brandon MOB a duty to properly perform its construction services and otherwise carry out its contractual obligations as described above.

86.     Malone Roofing breached its obligations under the Subcontract and Contract by, *inter alia*:

a)     Failing to perform its construction services in accordance with the Subcontract and Contract Documents;

b)     Failing to provide construction work that was free of defective workmanship and materials;

c)     Failing to provide construction services in a neat, first-class, good and workmanlike manner;

d)     Failing to provide construction services and a roofing system for the Project that was satisfactory to Brandon MOB;

e)     Failing to perform its construction services so as to ensure a properly installed and functioning roofing system for the Project;

f)     Failing to properly perform its construction services, leading to a roofing system for the Project that suffers extensive leaks following substantial rain events;

g)     Providing a roofing system for the Project that has required extensive remedial work; and

h)     Failing to timely or properly remedy the extensive problems and leaks in the roofing system.

87.     Malone Roofing's failures to perform its construction services for the Project as set forth above constitute material breaches of the Subcontract and Contract.

88.     Malone Roofing's breaches of its contractual obligations as set forth above have caused Brandon MOB to incur substantial damages.

18

89.     As a direct result of Malone Roofing's material breaches of the Subcontract and

Contract, Brandon MOB has suffered, and will continue to suffer, substantial harm and damages

of at least $750,000, due to the need to repair and/or replace the roofing system, retain

consultants to investigate the full extent of the damage to the roofing system and the underlying

structure, repair damage to the underlying structure, repair and/or replace items in the facility

damaged by the water penetration and other financial impacts which have yet to be determined.

### COUNT XIII
### MALONE ROOFING
#### (CONTRACTUAL INDEMNIFICATION)

90.     Brandon MOB incorporates by reference Paragraphs 1 through 89 as if fully

alleged herein.

91.     Article 13.1 of the Subcontract between Malone Roofing and Erdman is a

contractual indemnity provision.

92.     Pursuant to the terms of the contractual indemnity provision, Malone Roofing is

obligated to indemnify Erdman and Brandon MOB for any claims arising out of or resulting

from the performance of the work under the Subcontract, related to any "injury to or destruction

of tangible property including the loss of use therefrom" that is "caused in whole or in part by

any negligent act or omission of [Malone Roofing]."

93.     Malone Roofing owed a duty to Brandon MOB to properly perform its

construction services on the Project.

94.     Malone Roofing breached its duty to Brandon MOB to properly perform its

construction services on the Project.

95.     Malone Roofing's breach of this duty to Brandon MOB caused Brandon MOB to

incur substantial damages to tangible property.

96.     Among other things, Brandon MOB paid monies to repair and/or replace items in the facility damaged as a result of water leaking through the roofing system.

97.     Brandon MOB also paid monies to retain consultants to investigate the causes of the leaks in the roofing system.

98.     Pursuant to Article 13.1 of the Subcontract, Brandon MOB is entitled to be indemnified by Malone Roofing for all injury to or destruction of tangible property that arose in connection with the negligence of Malone Roofing and all costs associated with investigating the cause of the water leaks.

99.     The exact amount of the monies for which Malone Roofing owes an obligation of indemnification is at least $250,000, exclusive of interest and costs, and will be proven at trial.

**COUNT IX**
**MALONE ROOFING**
(NEGLIGENCE)

100.    Brandon MOB incorporates by reference Paragraphs 1 through 99 as if fully alleged herein.

101.    Malone Roofing had a duty to perform its construction services on the Project in a workmanlike manner and with the requisite standard of care.

102.    Malone Roofing breached these duties in performing its construction services on the Project, by *inter alia*, failing to provide construction services that complied with the applicable standard of care, negligently and improperly installing and repairing the roofing system on the Project, and failing to provide a roofing system that functioned properly and allowed for the safe use of the building as a medical facility.

103.    Malone Roofing's breaches of this duty as set forth above have caused Brandon MOB to incur substantial damages.

20

104.   As a direct and proximate cause of Malone Roofing's breaches, Brandon MOB has suffered, and will continue to suffer, substantial harm and damages of at least $750,000, due to the need to repair and/or replace the roofing system, retain consultants to investigate the full extent of the damage to the roofing system and the underlying structure, repair damage to the underlying structure, repair and/or replace items in the facility damaged by the water penetration and other financial impacts which have yet to be determined.

## COUNT X
## MALONE ROOFING
### (BREACH OF EXPRESS WARRANTIES)

105.   Brandon MOB incorporates by reference Paragraphs 1 through 104 as if fully alleged herein.

106.   Under the Subcontract, Malone Roofing expressly warranted that its work would be free of defects, would conform to the Subcontract Documents and that Malone Roofing would promptly correct any defects in its work.

107.   Malone Roofing breached these express warranties by:

    a)    Failing to provide construction services that were free of defects and would conform to the Subcontract Documents;

    b)    Failing to promptly correct defects in the roofing system on the Project; and

    c)    Failing to provide its work under the Subcontract in a workmanlike manner so as to provide a roofing system that was complete and without leaks.

108.   Malone Roofing's breaches of these express warranties as set forth above have caused Brandon MOB to incur substantial damages.

109.   As a direct and proximate cause of Malone Roofing's breaches of these express warranties, Brandon MOB has suffered, and will continue to suffer, substantial harm and

damages of at least $750,000, due to the need to repair and/or replace the roofing system, retain consultants to investigate the full extent of the damage to the roofing system and the underlying structure, repair damage to the underlying structure, repair and/or replace items in the facility damaged by the water penetration and other financial impacts which have yet to be determined.

## COUNT XI
## MALONE ROOFING
### (BREACH OF IMPLIED WARRANTIES)

110.    Brandon MOB incorporates by reference Paragraphs 1 through 109 as if fully alleged herein.

111.    Under the Subcontract and Contract, there were also implied warranties, including an implied warranty to perform construction services in a skillful, careful, diligent and workmanlike manner and a duty to provide a roofing system that was fit for its particular purpose.

112.    Malone Roofing breached these implied warranties by failing to perform its work in a skillful, careful, diligent and workmanlike manner so as to provide a properly functioning roofing system for the Project that was fit for its particular and intended purpose.

113.    Malone Roofing's breaches of these implied warranties as set forth above have caused Brandon MOB to incur substantial damages.

114.    As a direct and proximate cause of Malone Roofing's breaches of these implied warranties, Brandon MOB has suffered, and will continue to suffer, substantial harm and damages of at least $750,000, due to the need to repair and/or replace the roofing system, retain consultants to investigate the full extent of the damage to the roofing system and the underlying structure, repair damage to the underlying structure, repair and/or replace items in the facility damaged by the water penetration and other financial impacts which have yet to be determined.

22

## COUNT XII
### FIRESTONE
#### (BREACH OF EXPRESS WARRANTIES)

115.    Brandon MOB incorporates by reference Paragraphs 1 through 114 as if fully alleged herein.

116.    Firestone manufactured and supplied the rubber roofing system utilized on the Project.  Following construction, Firestone issued the Roofing Warranty directly to Brandon MOB.  Pursuant to the Roofing Warranty, Firestone expressly warranted that it would repair any leaks in the roofing system on the Project.

117.    Brandon MOB has provided Firestone with numerous notices of the deficiencies in the roofing system, including but not limited to, the extensive and substantial leaks.

118.    Despite numerous inspections and attempted repairs by Firestone, Malone Roofing and/or Erdman, the roofing system on the Project has had, and continues to have, extensive leaks following each substantial rain event.

119.    Firestone has breached the Roofing Warranty by failing and refusing to provide Brandon MOB with a properly functioning roofing system for the Project, despite due demand by Brandon MOB.

120.    Firestone's breaches of the Roofing Warranty have caused Brandon MOB to incur substantial damages.

121.    As a direct and proximate cause of Firestone's breaches of the Roofing Warranty, Brandon MOB has suffered, and will continue to suffer, substantial harm and damages of at least $750,000, due to the need to repair and/or replace the roofing system, retain consultants to investigate the full extent of the damage to the roofing system and the underlying structure,

repair damage to the underlying structure, repair and/or replace items in the facility damaged by the water penetration and other financial impacts which have yet to be determined.

## COUNT XIII
## FIRESTONE
### (BREACH OF IMPLIED WARRANTY)

122.    Brandon MOB incorporates by reference Paragraphs 1 through 121 as if fully alleged herein.

123.    Under the Roofing Warranty, there were also implied warranties, including an implied warranty to provide a roofing system that was fit for its particular and intended purpose.

124.    Firestone had knowledge that the rubber roofing system it manufactured and supplied for the Project would be utilized as a roofing system.

125.    Brandon MOB relied on Firestone's skill and judgment in manufacturing and supplying the roofing system for the Project.

126.    Firestone breached its implied duty to provide a roofing system that was fit for that particular purpose because it manufactured and supplied a roofing system that leaked extensively following substantial rain events and required extensive remedial work.

127.    Firestone's breaches of this implied warranty as set forth above have caused Brandon MOB to incur substantial damages.

128.    As a direct and proximate cause of Firestone's breaches of this implied warranty, Brandon MOB has suffered, and will continue to suffer, substantial harm and damages of at least $750,000, due to the need to repair and/or replace the roofing system, retain consultants to investigate the full extent of the damage to the roofing system and the underlying structure, repair damage to the underlying structure, repair and/or replace items in the facility damaged by the water penetration and other financial impacts which have yet to be determined.

WHEREFORE, Brandon MOB prays for the following relief:

Under Count I, that judgment be entered in Brandon MOB's favor and against Erdman for breach of contract in an amount of at least $750,000, together with interest, attorneys' fees, costs and expenses and for such other and further relief this Court deems just and proper.

Under Count II, that judgment be entered in Brandon MOB's favor and against Erdman for contractual indemnification in an amount of at least $250,000, together with interest, attorneys' fees, costs and expenses and for such other and further relief this Court deems just and proper.

Under Count III, that judgment be entered in Brandon MOB's favor and against Erdman for negligence in an amount of at least $750,000, together with interest, attorneys' fees, costs and expenses and for such other and further relief this Court deems just and proper.

deems just and proper.

Under Count IV, that judgment be entered in Brandon MOB's favor and against Erdman breach of express warranties in an amount of at least $750,000, together with interest, attorneys' fees, costs and expenses and for such other and further relief this Court deems just and proper.

Under Count V, that judgment be entered in Brandon MOB's favor and against Erdman breach of implied warranties in an amount of at least $750,000, together with interest, attorneys' fees, costs and expenses and for such other and further relief this Court deems just and proper.

Under Count VI, that judgment be entered in Brandon MOB's favor and against Erdman breach of implied covenant of good faith and fair dealing in an amount of at least $750,000, together with interest, attorneys' fees, costs and expenses and for such other and further relief this Court deems just and proper.

Under Count VII, that judgment be entered in Brandon MOB's favor and against Malone Roofing for third party beneficiary breach of contract in an amount of at least $750,000, together with interest, attorneys' fees, costs and expenses and for such other and further relief this Court deems just and proper.

Under Count XIII, that judgment be entered in Brandon MOB's favor and against Malone Roofing for contractual indemnity in an amount of at least $250,000, together with interest, attorneys' fees, costs and expenses and for such other and further relief this Court deems just and proper.

Under Count IX, that judgment be entered in Brandon MOB's favor and against Malone Roofing for negligence in an amount of at least $750,000, together with interest, attorneys' fees, costs and expenses and for such other and further relief this Court deems just and proper.

Under Count X, that judgment be entered in Brandon MOB's favor and against Malone Roofing for breach of express warranties in an amount of at least $750,000, together with interest, attorneys' fees, costs and expenses and for such other and further relief this Court deems just and proper.

Under Count XI, that judgment be entered in Brandon MOB's favor and against Malone Roofing for breach of implied warranties in an amount of at least $750,000, together with interest, attorneys' fees, costs and expenses and for such other and further relief this Court deems just and proper.

Under Count XII, that judgment be entered in Brandon MOB's favor and against Firestone for breach of express warranties in an amount of at least $750,000, together with interest, attorneys' fees, costs and expenses and for such other and further relief this Court deems just and proper.

Under Count XIII, that judgment be entered in Brandon MOB's favor and against

Firestone for breach of implied warranty in an amount of at least $750,000, together with

interest, attorneys' fees, costs and expenses and for such other and further relief this Court deems

just and proper.

Dated:  May 28, 2013.

Respectfully submitted,

BRANDON MOB INVESTORS, LLC

By: _____
John E. Wade, MSB No. 6850
Cody C. Bailey, MSB No. 103718
Its Attorneys

OF COUNSEL:

John E. Wade (Miss. Bar No. 6850)
jwade@brunini.com
Cody C. Bailey (Miss Bar No. 103718)
cbailey@brunini.com
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
Post Office Drawer 119
Jackson, Mississippi  39205
190 East Capitol Street, Suite 100
Jackson, Mississippi  39201
Telephone:  (601) 948-3101
Telecopier:  (601) 960-6902